IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:13cr191 (JCC) |
| | ) | |
| MOHAMMAD T. AL-SUQI, | ) | |
| | ) | |
| Defendant. | ) | |

## S T A T E M E N T   O F   R E A S O N S

This matter is before the Court on the sentencing of
Mohammad T. Al-Suqi.  On April 25, 2013, a federal grand jury
returned a thirty-four count indictment charging Defendant with
the following offenses: (1) Counts 1-31, aiding in the
preparation of a false tax return in violation of 26 U.S.C. §
7206(2); (2) Counts 32-33, making and subscribing a false return
in violation of 26 U.S.C. § 7206(1); and (3) Count 34, false
statement to a federal agent in violation of 18 U.S.C. § 1001.
[Dkt. 1.]  The Court held a jury trial on July 9-12, 2013.
[Dkts. 40, 44, 46, 51.]  Prior to the commencement of trial, on
July 9, 2013, the Court granted the Government's motion to
dismiss Counts 12-15 and 24-31.  [Dkts. 40-41.]  On July 12,
2013, the jury returned a verdict of guilty on all remaining
counts: Counts 1-11, 16-23, and 32-34.  [Dkt. 52.]  Pursuant to

1

the United States sentencing guidelines, U.S.S.G. § 1A1.1, *et seq.* (the "Guidelines"), the United States Probation Office issued a pre-sentence report (the "PSR"), calculating Defendant's range under the Guidelines as 78-97 months, with a Restricted Guideline Range of 60 months.

On October 4, 2013, Defendant submitted his Objections to the Pre-Sentence Investigation Report.  [Dkt. 60.]  Defendant raises three objections.  First, Defendant objects to the two-level enhancement for Obstruction of Justice, pursuant to § 3C1.1.  (Def. Obj. to PSR at 1.)  Second, Defendant objects to the restitution figure provided in Paragraph 77 of the PSR.  (Def. Obj. to PSR at 1.)  Third, Defendant objects to the tax loss figure listed in the PSR.  (Def. Obj. to PSR at 2.)

Defendant submitted his Position on Sentencing on October 11, 2013.  [Dkt. 64.]  Defendant seeks a downward departure from the sentencing range contained in the PSR and moves the court to impose a period of home confinement in lieu of incarceration.  (Def. Pos. on Sent. at 1.)  The Government filed its Position on Sentencing on October 11, 2013, and seeks a sentence within the 78-97 month Guidelines range and a monetary fine in the Court's discretion.  [Dkt. 63.]

Defendant was sentenced on October 18, 2013.  For the reasons stated below, the Court overruled Defendant's objections, denied Defendant's Motion for Downward Departure and

2

imposed a sentence of 36 months' incarceration as to each count, to run concurrently.  The Court further ordered Defendant to serve a term of one year of supervised release as to Counts 1-11, 16-23, and 32-33.  The Court imposed a term of two years supervised release as to Count 34.  Additionally, the Court ordered that Defendant pay restitution to the IRS, due immediately, in the amount of $73,870, to be offset by any amounts recovered by the IRS from taxpayers for tax returns prepared by Defendant for the 2007-2010 tax years.

## I.  Analysis

Sentences are imposed in accordance with 18 U.S.C. § 3553(a).  The Guidelines calculations are just one factor the Court takes into consideration when sentencing.  *Kimbrough v. United States,* 552 U.S. 85 (2007); *Gall v. United States*, 552 U.S. 38 (2007).  I understand that I am free to depart upwards or downwards from the guidelines range and to grant variances as *Gall* permits district courts to impose sentences both above and below the guideline recommendations.  *See Gall*, 552 U.S. at 45. I also understand that, under *United States v. Nelson*, 555 U.S. 350, 352 (2009), a sentencing court may not presume that a sentence within the applicable Sentencing Guidelines range is presumptively reasonable.

Section 3553(a) of Title 18 lists several factors for the Court to consider in imposing a sentence.  Relevant here, 18

U.S.C. § 3553(a) provides that "[t]he court, in determining the particular sentence to be imposed, shall consider . . . the nature and circumstances of the offense and the history and characteristics of the defendant."  Section 3553(a) also provides that the court shall consider the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence to criminal conduct, provide restitution to the victim, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

> 1.   <u>Obstruction of Justice Enhancement</u>

The Court concludes that an enhancement for obstruction of justice is appropriate here.  Pursuant to Section 3C1.1 of the Guidelines, a two-level enhancement is merited where:

> (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense.

U.S.S.G. § 3C1.1.  Commission of perjury constitutes such an obstruction.  U.S.S.G. § 3C1.1 cmt. n.4(B).  For a sentencing

4

court to apply the obstruction of justice enhancement based upon
perjury resulting from a defendant's trial testimony, the court
"must review the evidence and make independent findings
necessary to establish a willful impediment to, or obstruction
of, justice." *United States v. Perez*, 661 F.3d 189, 193 (4th
Cir. 2011) (quoting *United States v. Dunnigan*, 507 U.S. 87, 95
(1993).  It must find, by a preponderance of the evidence, that
the defendant when testifying under oath "(1) gave false
testimony; (2) concerning a material matter; (3) with the
willful intent to deceive" (rather than as a result of
confusion, mistake, or faulty memory).  *Perez*, 661 F.3d at 192-
93 (quoting *United States v. Jones*, 308 F.3d 425, 427 n.2 (4th
Cir. 2002)); *see Dunnigan*, 507 U.S. at 94-96.  In so finding,
the sentencing court "must specifically identify the perjurious
statements and make a finding either as to each element of
perjury or that encompasses all of the factual predicates for a
finding of perjury." *Jones*, 308 F.3d at 427 n.2 (internal
quotation marks omitted).

   The Court concludes that Defendant perjured himself at
trial and that a two-level enhancement for obstruction of
justice therefore is warranted.  First, the Court finds that
Defendant gave false testimony.  At trial, Defendant stated
that:

1.   He only entered amounts provided by his taxpayer customers for their deductions, expenses, and credits, (Tr. 174:3, ("I entered the information that he provided."));

2.   He did not exaggerate or enter false information about those items on his customers' tax returns or his own tax returns, (Tr. 192:2-4, ("I was not exaggerating.  I was hoping to collect the 200, but I got 100 and that's the true statement."); Tr. 206:8-11, ("Q. . . . What is the other interest that cost you $2,460 in 2008 for your business? A. It's wrong column, but I incurred both . . ."));

3.   Any false information was the result of his "mistake[s]" and misunderstanding or due to misinformation provided by his customers, (Tr. 200:18-21, ("Maybe that was a mistake on the – a checkmark on the – in the software.  That's a mistake."); Tr. 204:10-13, ("Q. Look at the column D.  Didn't you -- none of your children attended college in the Midwest, did they Mr. Al-Suqi?  A. That's again, it's probably mistake on – I mean, data entry mistake."); Tr. 208:22 ("It's a mistake on the line item."));

4.   He did not participate in preparing and filing tax returns for the tax year of 2012. (Tr. 172:24-25, 173:2-4 ("Q. For the tax year 2012 – A. Right. Q. – were you preparing or electronically filing returns that year?  A. No."));

Despite Defendant's flat denials of knowingly and willfully engaging in such behavior, the jury found beyond a reasonable doubt that Defendant was guilty of aiding in the preparation of multiple false tax returns, making and subscribing his own false tax return, and making a false statement to a federal agent regarding his and his family's participation in preparing and filing tax returns electronically in the tax year of 2012.  [Dkt. 52.]  In reaching this verdict, the jury necessarily must not have credited Defendant's testimony and must have credited the Government's witnesses and evidence to the contrary.  The jury therefore must have determined that Defendant did not testify truthfully about his videotaped conversation between himself and Special Agent Iqual and the admissions and evidence of wrongdoing contained therein, about entering only the amount of deductions, expenses, and credits to which his clients and he were entitled, about his lack of wrongful intent in preparing and filing the specific taxpayers' returns and his own specific returns, and about his lack of participation in preparing and filing tax returns for the tax year of 2012.  As a result, the Court concludes that he gave false testimony on these issues.

Second, Defendant's false testimony clearly was material, as his denials -- that he knowingly and willfully exaggerated or entered false amounts of itemized deductions,

business expenses, and education credits for the specific
taxpayers identified in Counts 1-11 and 16-23 and for Special
Agent Iqual's cover identity, that he knowingly and willfully
made false representations on his own tax returns about his
entitlement to certain itemized deductions and education
credits, and that he knowingly and willfully lied about his
continued participation in preparing and filing tax returns
electronically and via paper for the tax year of 2012 -- went to
the ultimate issues in the case, *i.e.*, his knowing and willing
engagement in the preparation and filing of certain false tax
returns, in making and subscribing his own false tax returns,
and in making a false statement to a federal agent.

Finally, the Court finds that Defendant's false
testimony was given with the willful intent to deceive.
Defendant's testimony was directly opposed to the Government's
evidence -- including Defendant's own statements recorded on
video during a conversation between himself and Special Agent
Ghassan Iqual, the testimony of the specific taxpayers involved
in Counts 1-11 and 16-23, and the testimony of other witnesses -
- as well as to the jury's conclusion that Defendant knowingly
and willfully engaged in the charged offenses.  As a result,
Defendant's testimony on those points could not possibly have
been the result of confusion, mistake, or faulty memory.
Accordingly, the Court concludes that Defendant knew that his

8

testimony was false when he gave it.  The Court therefore finds that Defendant's false testimony meets all the elements of perjury by a preponderance of the evidence.  As a result, a two-level enhancement for obstruction of justice is proper here.

    2.  <u>Restitution</u>

    Defendant objects to the restitution figure of $73,870.00 provided in Paragraph 77 of the PSR.  Defendant argues that the restitution figure should be reduced in the amount that Defendant's taxpayer clients are required to pay to the Internal Revenue Service ("IRS").  (Def. Obj. to PSR at 1.)

    The Court will overrule Defendant's objection, but will enter an order that does not permit the IRS obtain a double-recovery of the deficiencies owed by Defendant's clients. Pursuant to 18 U.S.C. §§ 3583(d), 3563(b)(2) and 3556, a court may include an order of restitution as a condition of supervised release.  Here, the PSR lists a restitution amount of $73,870.00, the sum of the tax losses incurred by the IRS because of the charged conduct by Defendant.  These amounts were proven at trial.  (*See* Gov't Ex. 40-1.)[1]

---

[1] The PSR states that restitution is required in this case pursuant to 18 U.S.C. § 3663A. (PSR ¶ 18.)  Section 3663A, the Mandatory Victims Restitution Act ("MVRA") does not apply to offenses under Title 26.  Defendant's only offense that does not fall under Title 26 is False Statement to Federal Agent, in violation of 18 U.S.C. § 1001.  As noted in the PSR, this offense did not cause a loss to the IRS.  (PSR ¶ 19.)  Accordingly, in this case the Court may only order restitution as a condition of supervised release pursuant to 18 U.S.C. § 3583(d), which allows for an order of restitution to be imposed for any criminal offense, including those in Title 26.

While the IRS will receive full restitution of this amount, it is not entitled to a double-recovery. *See United States v. Smith*, 398 F. App'x, 938, 942 (4th Cir. 2010) (noting that the district court had erred in "failing to order restitution to the IRS in the full amount of its losses, with the amount to be later reduced by amounts recouped from taxpayers."); *United States v. Cadet*, 664 F.3d 27, 34 (2d Cir. 2011) (noting that in imposing restitution as a condition of supervised release, the district court erred in failing to "reduce the total to be paid under the restitution order to account or payments that the taxpayer-clients have made to the IRS. . .").  Defendant's individual taxpayer clients, while uncharged in the instant action, are nevertheless required to satisfy their outstanding tax liabilities.  Thus, the Court will enter an order providing that restitution payable to the IRS will be offset by any and all amounts collected by the IRS from the taxpayers for tax returns prepared by Defendant for the 2007-2010 tax years.

3.   <u>Tax Loss</u>

Defendant objects to the tax loss figure of $4,168,457.00, listed in Paragraph 1 on Worksheet A.  (Def. Obj. to PSR at 2.)  Defendant argues that this amount was not presented at trial.  Defendant contends that rather than looking at tax loss, the Court should instead consider Defendant's

10

financial gain from the offense.  (Def. Obj. to PSR at 2.)
Defendant advances a calculation of $250.00 per customer times
19 convictions for preparing false tax returns for a total gain
of $4,750.00.  (Def. Obj. to PSR at 2.)

The Court will overrule Defendant's objection.  The
Guidelines provide a formula for calculating tax loss.  The
Guidelines define tax loss as the "total amount of loss that was
the object of the offense."  U.S.S.G. § 2T1.1(c)(1).  If the
offense involves filing "a tax return in which gross income was
underreported, the tax loss shall be treated as equal to 28% of
the unreported gross income . . . plus 100% of any false credits
claimed against tax, unless a more accurate determination of the
tax loss can be made."  U.S.S.G. § 2T1.1(c)(1)(A).
Additionally, "[i]n determining the tax loss attributable to the
offense . . . all conduct violating the tax laws should be
considered as part of the same course of conduct or common
scheme or plan unless the evidence demonstrates that the conduct
is clearly unrelated."  U.S.S.G. § 2T1.1, comment. (n.2).

"The government bears the burden of establishing the
tax loss by a preponderance of the evidence."  *United States v.
Mehta*, 594 F.3d 277, 282 (4th Cir. 2010).  The amount of tax
loss may be uncertain in some instances; "the guidelines
contemplate that the court will simply make a reasonable
estimate based on available facts."  U.S.S.G. § 2T1.1, comment.

(n.1).  "Furthermore, a district court 'may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy.'"  *Mehta*, 594, F.3d at 282 (quoting U.S.S.G. § 6A1.3(a)).

Courts have held that a "PSR generally bears sufficient indicia of reliability to be considered as evidence by a sentencing judge when making factual determinations." *United States v. Rome*, 207 F.3d 251, 254 (5th Cir. 2000) (citing *United States v. Narviz-Guerra*, 148 F.3d 530, 537 (5th Cir. 1998)).  As a result, the Court may adopt the findings in a PSR absent an affirmative showing by the defendant that the conclusions are incorrect.  *United States v. Terry*, 916 F.2d 157, 162 (4th Cir. 1990); *United States v. Viar*, 277 F. App'x 266, 276 (4th Cir. 2008).  A defendant's "mere objection" to the contents of a PSR is not sufficient to challenge the PSR's accuracy.  *Terry*, 916 F.2d at 162.  Instead, the defendant "has an affirmative duty to make a showing that the information in the presentence report is unreliable, and articulate the reasons why the facts contained therein are untrue or inaccurate."  *Id.* Without such an affirmative showing by the defendant, the court may adopt the PSR's findings without further explanation. *United States v. Pryor*, 75 F. App'x 157, 160 (4th Cir. 2003).

12

The PSR states that the IRS sustained a tax loss of $4,168,457.00 because of Defendant's conduct.  (PSR ¶ 17.) Special Agent James Havrilla's ("Havrilla") declaration, which formed the basis for the tax loss calculation in the PSR, states that he estimated a tax loss of $3,951,980.00. (Havrilla Decl. at 2.)[2]  The Court will adopt Special Agent Havrilla's estimated tax loss of $3,951,980.00 as detailed in Chart C, attached to his declaration.  (Havrilla Decl.)  The PSR explains that Havrilla focused only upon fraudulently claimed education credits and refundable education credits.  For both of those credits, a taxpayer would have been required to file a Form 1098-T with the IRS.  The PSR relates that between tax years 2009 and 2012, Defendant "prepared and filed over 1,500 fraudulent federal income tax returns where education credits were claimed" but no corresponding 1098-T was ever filed with the IRS.  (PSR ¶ 17.)  The probation office states that by focusing only on the education credits, and not Defendant's other fraudulent tax filings, it has advanced a "conservative figure."  (PSR at A-1.)

The Court finds that this is a reasonable methodology, and will adopt the findings of the PSR as to tax loss, except to the extent that the PSR misstates Havrilla's calculation of

---

[2] At sentencing, the Government explained that the figure in the PSR was based on an earlier draft of Havrilla's declaration.  The Government stated that the final estimate of tax loss was $3,951,980.00, as contained in the Havrilla Declaration submitted to the Court.

total tax loss associated with fraudulent education credits.
The Court will instead adopt the figure $3,951,980.00, contained
in Havrilla's declaration.  Thus, on the basis of this evidence,
the Court finds that the Government has met its burden of
establishing tax loss by a preponderance of evidence.

Defendant argues that the Government has not met its
burden of establishing tax loss because these amounts were not
proven at trial.  This argument runs counter to the text of the
Guidelines, which provides that in calculating tax loss "all
conduct violating the tax laws" – not just charged conduct –
"should be considered as part of the same course of conduct or
common scheme or plan unless the evidence demonstrates that the
conduct is clearly unrelated."  U.S.S.G. § 2T1.1, comment.
(n.2); *United States v. Kotmair*, 11 F. App'x, 109, 111 (4th Cir.
2001) (noting that the tax loss calculation should include
losses incurred in the years of conviction as well as other
years in which the defendant's actions were part of the same
course of conduct).  Defendant has not offered any evidence
challenging the validity of the case agent's calculations.

Moreover, the Defendant's argument that the Sixth
Amendment bars this Court from considering tax loss evidence
submitted by the Government for sentencing, but not proven at
trial is unavailing.  (Mem. in Support of Def. Mot. for Downward
Departure. at 2-3.)  Contrary to Defendant's argument, "*Booker*

14

did not change the sentencing court's ability to consider uncharged or even acquitted conduct during sentencing." *United States v. Grubbs*, 585 F.3d 793, 799 (4th Cir. 2009); *United States v. Omozee*, 359 F. App'x 421, 423 (4th Cir. 2010). Therefore, the Court is permitted to engage in judicial fact-finding in determining the amount tax loss caused by Defendant's conduct.

Indeed, Defendant's proposed calculation does not measure "tax loss" as defined in the Guidelines. Defendant argues that "tax loss here would be too difficult to calculate" and proposes that the Court look instead to Defendant's financial gain in calculating his base offense level. (Def. Obj. to PSR at 2.) The Court rejects Defendant's contention that a tax loss calculation would be impossible in this case. The Government has provided a reasonable methodology that, in fact, understates the measure of tax loss by limiting looking only to the wrongfully claimed education credits, rather than the full value of the false deductions and credits Defendant claimed for himself and his clients. (PSR ¶ 14, 17.) Moreover, Defendant's proposal that the Court look to Defendant's financial gain is plainly not in line with the Guidelines. Tax loss is defined in the Guidelines as the "total amount of loss that was the object of the offense." U.S.S.G. § 2T1.1(c)(1). Financial gain is not a part of this Court's inquiry.

Therefore, the Court will overrule Defendant's objection to the tax loss calculation.

### 4.   Downward Departure

#### A.   Section 3553(a) Factors

Defendant moves for a downward departure from the Guideline range.  Defendant does not point to a specific provision in the Guidelines that would warrant a downward departure.  Instead, he makes a number of arguments based on the § 3553(a) factors, including his lack of a criminal history, his motive for committing the crime, his role in the community, the need to provide restitution to the victims of the offense and the kind of sentences available.

The Court has considered the history and characteristics of the Defendant and finds that Defendant has failed to present any mitigating circumstances that are not adequately taken into consideration under the Guidelines. Accordingly, the Court will deny Defendant's motion for a downward departure.

#### B.   Physical Aliments

Defendant requests a sentence below the guideline range due to his physical ailments.  (Def's Position on Sentencing at 9.)  Defendant alleges that he suffers from "diabetes, eczema, hypertension, and hyperlipidemia."  (*Id.*) Defendant claims that because of the "extensive medical

16

treatment" these conditions require, "it would not be feasible for Mr. Al-Suqi to be incarcerated. (*Id.*)

U.S.S.G. § 5H1.4 states that physical condition "is not ordinarily relevant in determining whether a departure may be warranted." However, this same provision further provides that "an extraordinary physical impairment may be a reason to depart downward." *Id.; see also United States v. Ghannam*, 899 F.2d 327, 328-29 (4th Cir. 1990).

Departures based on the defendant's physical condition are generally discouraged. *See United States v. Rivera*, 994 F.2d 942, 948 (1st Cir. 1993). For this reason, a number of jurisdictions have found that, in order to apply this downward departure, a district court must make a specific finding that the defendant suffers from an extraordinary physical impairment. These courts have also discussed a number of relevant factors to consider. These factors include: (1) whether the defendant's conditions are exceptional; (2) whether there is a high probability that incarceration will shorten the defendant's life span; (3) the inability of the Bureau of Prisons ("BOP") to adequately meet the defendant's medical needs; and (4) whether home confinement would be more efficient and less costly. *See, e.g., United States v. Bostic*, 371 F.3d 865, 874-77 (6th Cir. 2004) (collecting cases); *United States v. Martin*, 363 F.3d 25, 49 (1st Cir. 2004).

17

The defendant bears the burden of proving that a downward departure is warranted.  *United States v. Rutana*, 923 F.2d 1155, 1159 (6th Cir. 1991).  In general, the district court must be provided with sufficient evidence from which to make the requisite findings.  *Bostic*, 371 F.3d 865 at 875.

Based on the facts and evidence presented, the Court finds that Defendant does not suffer from an extraordinary physical impairment that warrants a downward departure.  While the Court is sympathetic to Defendant's health issues, the standards for downward departure on medical grounds are rigorous.  *See United States v. Gebele*, 117 F. Supp. 2d 540, 548 (W.D. Va. 2000) (finding that defendant's weight loss, nausea, and vomiting due to gastritis, and his back pain and anemia, which were treatable by institutional physician, did not amount to extraordinary physical impairments).  As shown by Defendant's Position on Sentencing, he is currently on medication to treat his symptoms.  (Def's Position on Sentencing at 9.)  Defendant is not afflicted with a physical impairment that the BOP would have difficulty accommodating.  As such, the Court declines to grant the departure.  *See, e.g., United States v. Osorio*, 305 F. Supp. 2d 319, 321-22 (S.D.N.Y. 2004) (finding that defendant's high blood pressure and general pain from a prior heart attack did not constitute an extraordinary physical impairment).

## II. Conclusion

For these reasons, the Court will overrule Defendant's objections to the PSR and deny Defendant's Motion for Downward Departure.

Defendant shall have fourteen (14) days from the date of sentencing, October 18, 2013, to file a Notice of Appeal.


                                 /s/
October 22, 2013            James C. Cacheris
Alexandria, Virginia     UNITED STATES DISTRICT COURT JUDGE